IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BERNARD TOMLINSON RANSON,  )
                           )
            Petitioner,    )
                           )
v.                         )    Civil Action No. 3:22-cv-751-HEH
                           )
HAROLD W. CLARKE,          )
                           )
            Respondent.    )

## MEMORANDUM OPINION
(Granting Respondent's Motion to Dismiss)

Petitioner Bernard Tomlinson Ranson ("Petitioner" or "Ranson"), a Virginia inmate proceeding with counsel, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 (the "§ 2254 Petition," ECF No. 1) challenging his convictions in the Circuit Court for Mecklenburg County (the "Circuit Court"). Following his *Alford*[1] pleas, Petitioner was convicted of attempted murder, malicious wounding, two (2) counts of abduction, and four (4) counts of use of a firearm in the commission of a felony. (*Id.* ¶¶ 3–4.) In his § 2254 Petition, Petitioner contends that he is entitled to relief on the following ground:

> Counsel failed to fully advise [] Petitioner regarding the available defenses to each charge, the strengths and weaknesses of those defenses, the likelihood of conviction for lesser included offenses and the resulting impact of the overall sentence.

(*Id.* ¶ 18 (emphasis omitted).) Respondent Harold W. Clarke ("Respondent") filed

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

a Motion to Dismiss (the "Motion," ECF No. 5) on March 3, 2023. For the reasons that follow, the Motion will be granted.

## I. PROCEDURAL HISTORY

Petitioner, proceeding with counsel, filed a petition for a writ of habeas corpus in the Circuit Court wherein he raised his present ground for relief.[2] (Ex. 4 at 23, ECF No. 7-4.) The Circuit Court provided the following summary of the record:

> Ranson pled guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), on December 19, 2014 to attempted murder, malicious wounding, two counts of abduction and four counts of using a firearm in the commission of a felony. He was sentenced to a total of 58 years with 36 years suspended on February 11, 2015. The sentencing order was entered on February 28, 2015. Ranson moved to withdraw his *Alford* pleas and to modify the sentence. On May 20, 2015, the Court denied the motion to withdraw the pleas but suspended an additional year of the active sentence imposed for malicious wounding. Ranson's petitions to appeal the denial of his motion to withdraw the *Alford* pleas were denied by the Court of Appeals of Virginia, and the Supreme Court of Virginia.
> Ranson filed his petition for habeas relief on November 6, 2017. The petition alleges trial defense counsel was ineffective because he "failed to fully advise" Ranson of available defenses and lesser included offenses. Petition, p. 9. The Director filed the Motion to Dismiss on January 22, 2018, alleging the petition does not "warrant review or relief" under *Anderson v. Warden*, 222 Va. 511, 281 S.E.2d 885 (1981). The Director claims the adequacy of Ranson's trial counsel, and the voluntariness of Ranson's *Alford* guilty pleas are conclusively established by the record, and because Ranson has not alleged a valid reason why he should be allowed to controvert his prior statements in the record, *Anderson* mandates dismissal.
> Ranson signed a written plea form, agreeing to enter *Alford* pleas to the eight felony offenses. Plea Tr. 5. At the plea hearing, the judge advised Ranson of the eight charges noted above and asked if they were correct. Ranson responded, "Yes, sir." Plea Tr. 4. He acknowledged he wanted to enter *Alford* pleas to the eight charges. The judge told him that if he did not understand the questions asked of him, he should advise the judge, and either the judge or his trial counsel would talk to him. Plea Tr. 5–6. Ranson stated

---

[2] The Court employs the pagination assigned by CM/ECF. The Court correct the capitalization, punctuation, emphasis, and spelling in the quotations from the parties' submissions.

2

his birth date, said he had a GED, and said he was a "professional climber of sorts; tree work or cell phone tower or amusement rides or commercial fishing." Plea Tr. 6. When the judge asked if he fully understood the charges, he stated he did not understand the abduction charges. Plea Tr. 7. The judge explained, read the language in the indictment, and asked twice if he understood. Ranson responded each time that he understood. The judge also stated, "I don't want you to plead guilty to something if you don't understand what this is about" and Ranson responded "I understand." Plea Tr. 7. Ranson acknowledged he had discussed the elements of each charge with his counsel, he understood what the Commonwealth must prove to establish his guilt, and he had enough time to discuss any defenses he might have to the charges with counsel. Plea Tr. 8. He also acknowledged he had discussed whether to plead guilty or not guilty with counsel, decided for himself to plead guilty and was entering the pleas freely and voluntarily. Plea Tr. 8.

The following is a summary of the facts stated by the Commonwealth at the plea hearing: Joseph Poythress was driving down a roadway after dropping his son off at a residence at the end of the roadway. He saw Ranson standing in the roadway holding a "long firearm." Ranson stepped towards Poythress' car and fired a bullet into the windshield of the car. Poythress sped away and Ranson fired another round at him as he was driving away. Poythress sustained injuries to his arms, hands, and body. Two other men, Gregory Mulchi and Hearld Seaman, were in a car coming down the same roadway a "short time later." They saw Ranson and his wife both holding "long firearms." Ranson pointed his firearm at them, and told them to stop the car, put their hands up and get out of the car. They stopped the car and put their hands up. They did not get out of the car. Ranson approached the car, recognized Mulchi, and then allowed them to continue down the roadway. The Commonwealth introduced several exhibits, including photographs of the scene, the firearm, shotgun shells, and Poythress' car. Plea Tr. 9-13.

After his arrest that day, Ranson was advised of his rights. He stated, "The car came speeding into site (sic). I signaled for him to stop. He accelerated and swerved towards me. I then raised my gun to his windshield. The barrel went through, and a shot was fired. I reloaded and took aim then intentionally fired toward the driver's door as he turned." Plea Tr. 12.

Prior to the Commonwealth's summary of the evidence, Ranson had acknowledged he was not pleading guilty because he was in fact guilty. Plea Tr. 8-9. After the Commonwealth's summary the judge asked him: "are you pleading guilty because this is the Commonwealth's evidence and you're not going to take the risk if a jury would find you guilty beyond a reasonable doubt?" Ranson responded "yes." Plea Tr. 14.

The judge stated the "evidence of guilt is overwhelming" and found Ranson had "intelligently concluded" it was in "his best interest to enter the *Alford* plea of guilty." Plea Tr. 14. Ranson admitted he knew he was waiving Constitutional rights; he understood his written plea agreement, his counsel had discussed it with him, and his statements in the agreement were true. He also understood the maximum penalty for each of the eight felonies, including the mandatory penalty for the four firearm offenses. He understood the Commonwealth would move to nol pros the ninth indictment (aggravated malicious wounding) if he pled to the remaining eight offenses. Ranson understood there was no agreement as to punishment or sentencing recommendations for the eight charges. Plea Tr. 14–19.

Finally, Ranson acknowledged he was satisfied with the services of his counsel, he was waiving the right to appeal the sentence, he understood the judge's questions and he had no questions to ask the judge. Plea Tr. 19.

The judge found Ranson understood the nature of the charges, understood the consequences of the pleas, and had pled guilty freely, intelligently, and voluntarily. Plea Tr. 20.

Ranson's defense counsel then said Ranson wanted him to state "what our evidence would have been had the case gone to trial." Plea Tr. 20. He stated Ranson's wife told Ranson that Poythress sped down the road and caused their son to fall into a bush. Ranson thought Poythress was a drunk driver who could possibly hit his child, so he stood in the road with his shotgun to stop him. Poythress' car hit Ranson, and "'the gun went off." Ranson then shot at the car again to keep Poythress off his property. Ranson thought the victims of the abduction were coming to hurt him so he "stepped out and held them, stopped them." He then let them go when he recognized one of the men. Plea Tr. 20-22.

The judge asked if those comments change, in any way, Ranson's desire to plead guilty. Trial counsel responded, "no, sir." Plea Tr. 22.

At the sentencing hearing on February 11, 2015, Ranson's testimony was consistent with the factual statement given by his trial counsel on December 19, 2014. His testimony also mirrors facts stated in his Petition for Writ of Habeas Corpus. He stated his gun "went off" without him pulling the trigger [Sentencing Tr. 36–37], he acted "reasonable" [Tr. 39], he fired two shots, and the second shot was fired toward the driver's side car door. Sentencing Tr. 42. Dr. Evan Nelson testified that although Ranson was not insane and did not have "an official paranoid personality disorder," he would "interpret a situation in ways that are disproportionate to the setting and involve odd thinking." Sentencing Tr. 56. The trial judge stated the facts were "absolutely outrageous, absolutely outrageous" [Tr. 92] and, but for Dr. Nelson's testimony, he would have sentenced Petitioner to an active sentence longer than the Commonwealth's 25-year recommendation. He imposed an active sentence of 22 years. Sentencing Tr. 94–96.

4

(*Id.* at 1–5 (alterations in original).)

The Circuit Court ultimately denied Petitioner's state habeas petition. The Circuit Court found that Petitioner's reasons for asserting that his plea was not knowing and voluntary were foreclosed by *Anderson v. Warden of Powhatan Corr. Ctr.*, 281 S.E.2d 885 (Va. 1981), and similar cases. (Ex. 4 at 10.) Specifically, the Circuit Court concluded:

> As noted earlier, Ranson's proffered "valid reasons" are the allegations of a "set of facts directly contrary to his earlier statements made in open court." His allegations, in essence, are that although counsel advised him of defenses and lesser included offenses, counsel did not "*fully advise*" him. These allegations are not sufficient, under *Anderson*, to allow him to controvert his statements to the trial court. The truth and accuracy of his prior representations "as to the adequacy of his counsel and the voluntariness of his guilty plea" are conclusively established. Therefore, "no evidentiary hearing should be permitted" and Ranson cannot "disavow his prior, contrary declarations." *Anderson*, 222 Va. at 316, 281 S.E.2d at 888.

(Ex. 4 at 10.) Alternatively, the Circuit Court concluded that Petitioner failed to demonstrate deficiency or prejudice of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). (Ex. 4 at 10–14.)

Petitioner appealed that decision to the Supreme Court of Virginia. The Supreme Court of Virginia refused the petition for appeal. (Ex. 5 at 1, ECF No. 7-5.)

## II. APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVIEW

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996

5

("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### III. ANALYSIS

#### A. General Principles Regarding Effective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577,

6

588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Petitioner that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [is] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (citing *Hill*, 474 U.S. at 59–60) (internal citation omitted). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

### B. Petitioner's Claim

At his plea hearing, Petitioner acknowledged that his attorney had discussed with him the facts of the case and any possible defenses to the case. Now, he contends that his counsel was deficient because he failed to "fully" discuss possible defenses. For example, with respect to the malicious wounding charge, Petitioner contends that he "was not fully advised of his available defenses to this charge, including defense of family, defense of self, lack of specific intent, and accident, each of which could result in the acquittal of the primary offense of malicious wounding as well as the accompanying firearm charge." (§ 2254 Pet. ¶ 33.) With respect to the attempted murder charge, Petitioner contends that he "was not fully advised of his available defenses, including the corpus delicti rule (stating that uncorroborated confession cannot support a conviction) and the lack of specific intent to kill, either of which could result in acquittal of the primary offense of attempted murder as well as the accompanying firearm charge." (*Id.* ¶ 66.) Petitioner further contends that he was not fully advised of the defense of "heat of passion" to the attempted murder charge. (*Id.* ¶ 67.) With respect to the abduction charges, Petitioner asserts that he "was not fully advised of his available defenses to this charge, including defense of family, defense of self, and lack of specific intent, each of which could result in acquittal of the primary offense of abduction as well as the accompanying firearm charge." (*Id.* ¶ 85.)

### C. State Habeas Decision

In response to Petitioner's state habeas claim, Respondent submitted the affidavit of Petitioner's trial counsel, Brendan U. Dunning, esquire. Motion to Dismiss Ex. 1,

8

*Ranson v. Clarke*, No. CL17-941 (Va. Cir. Ct. filed Jan. 22, 2018). In that affidavit, Mr. Dunning persuasively explains why, despite the defenses Petitioner advances here, Petitioner's conviction on all counts was likely, and an *Alford* plea was Petitioner's wisest choice to reduce his significant sentencing exposure. Specifically, Mr. Dunning states:

> In my representation of Mr. Bernard Ranson, I met with him more than fifteen (15) times to discuss his case. Initially, Mr. Ranson indicated that he wished to try his case in front of a jury. In our initial discussions, Mr. Ranson demanded that the alleged victim be charged with assault and that the charges against him and his wife be dismissed. I explained the Commonwealth did not agree to such a deal.
> Initially, it seemed that a jury trial might be a wise choice. As I examined the evidence, however, I recommended against trying the case. The defenses mentioned in the habeas petition (defense of family, defense of self, lack of specific intent, accident, and heat of passion) were discussed at length, as well as the possible ramifications of each. However, these defenses are not applicable to the second shot fired by Mr. Ranson. In Mr. Ranson's statement to the police immediately after the shooting, he described his second shot as follows: "I reloaded and took aim then intentionally fired toward the driver's door as he turned." Additionally, other evidence pointed to a state of mind inconsistent with the above defenses. A sign had been hung on Mr. Ranson's property stating: "Trespassers will be shot." There had been a longstanding conflict between Mr. Ranson and his neighbors regarding cars driving on the road adjacent to Mr. Ranson's house.
> I visited the scene of the shooting, with directions from Mr. Ranson, regarding where the events of the shooting took place. The Commonwealth was similarly prepared. The police had provided me with Google Earth printouts to illustrate the site of the incident. My opinion regarding the second shot was that it looked as if the second shot could have hit the alleged victim's car from where Mr. Ranson was shooting. Also, Mr. Ranson described the shooting to a relative on a recorded call from the jail. When asked why he fired the second shot, Mr. Ranson stated that he had "no explanation" for the second shot.
> Mr. Ranson also would have had a very difficult time proving any of the above theories without the cooperation of his wife, the co-defendant. I was informed that she would invoke her Fifth Amendment privilege and refuse to testify on his behalf. In my opinion, Mr. Ranson was not capable of explaining the second shot. To do so would have required him to disavow

9

his own written statement to the police immediately after the shooting occurred. From my viewing of the scene, and the maps printed by the Commonwealth, a jury likely would have decided that the [second] shot at the . . . car was life threatening to the driver. In my opinion, shooting at the car from behind while it is speeding away with an unarmed passenger does not present any viable defense options. I advised him that the Commonwealth would likely argue that the motive for the shooting was anger. He had demonstrated anger towards his neighbors previously, and the no trespassing signed warned of violence. I advised that it was very easy in this case to show that anger towards the neighbors existed, and the jury was likely to believe that the motive for the second shot. Additionally, his statement regarding the second shot would contaminate any defense he put forth regarding the first shot.

The risk of a jury trial was extremely high, since the jury could not suspend any time. Mr. Ranson was subject to delusional thinking (although not legally insane). This fact, combined with his obvious anger towards his neighbors, made him a poor witness for a jury trial, in my opinion. My recommendation to Mr. Ranson was that he enter an Alford plea of guilty and ask the judge to run the firearms charges concurrent with each other (which a jury could not do). The guidelines without the minimum mandatory time came out to a low end of three (3) years, a midpoint of five (5) years and seven (7) months, and a high end of six (6) years (Transcript February 11, 2015, page 10). Of course, the minimum mandatory time would supersede the guidelines; however, the lower guidelines provided a good argument for running the mandatory time concurrent. I told Mr. Ranson that I believed he would be convicted of the second shot at the very least. That being the case, I recommended that he plea and ask the judge to run the minimum mandatory time together, leaving a sentence of eight years. With time served and good behavior time, this would have resulted in approximately a five (5) year active sentence, which was less than he would get if a jury sentenced him on the charges associated with the second shot and the abductions, even if the first attempted murder were dismissed entirely.

My reasons for preferring to attempt to obtain a low sentence rather than attempt to gain an acquittal were that there were several facts that I believed would help in a sentencing that would be meaningless in a jury trial (because of the mandatory time and the inability of the jury to suspend time or run it concurrent). First, Mr. Ranson had a minimal criminal record. He had no felonies, one misdemeanor from the age of 16, a DUI and a misdemeanor drug possession. Second, he had extremely good witnesses willing to testify at sentencing, including his father, a retired scientist who had been extremely supportive, and members of his church. He had given up drugs and drinking and had no substance abuse issues. Most importantly,

> he had retained Dr. Evan Nelson to conduct a private psychiatric evaluation upon my recommendation. Dr. Nelson told me that he could testify Mr. Ranson had been denied needed psychiatric care and could address his issues with medication. These facts provided Mr. Ranson with the basis for an effective sentencing.
>
> Mr. Ranson agreed that a sentencing would give a better chance for a low sentence than a trial. I had practice before Judge Osborn for approximately 15 years, both as a prosecutor and a defense attorney. I felt certain he stood a better chance at a sentencing than a trial. During the sentencing, Judge Osborn stated that he would have sentenced Mr. Ranson to thirty or forty years but for the testimony of Dr. Nelson. (Transcript of February 11, 2015, page 95.)

*Id.* at 1–3.

The Circuit Court concluded that Petitioner failed to demonstrate deficiency or prejudice:

> Upon consideration of Ranson's version of the facts, and the Commonwealth's factual summary, defense counsel's advice to Ranson was well within the range of reasonable professional assistance and competence demanded of attorneys in criminal cases. Ranson had made incriminating admissions to law enforcement and there were no other witnesses other than his wife, who would not testify on his behalf. As the judge stated, the evidence of Ranson's guilt was overwhelming (Plea Tr. 14). and the facts were outrageous (Sentencing Tr. 92). Ranson acknowledged he was pleading guilty after discussions with his counsel. He also acknowledged he was not pleading guilty because he believed he was guilty, but only because he believed the Commonwealth's evidence was sufficient to find him guilty. This acknowledgement supports the conclusion that counsel's assistance, including counsel's advice as to defenses and lesser included offenses, was reasonable. Ranson has not met the burden required under the first prong of the *Strickland* test.
>
> As to the second prong, a general blanket allegation that a petitioner would have gone to trial is not enough to indicate that there was a reasonable probability of a different decision being made by the petitioner. *Hill*, 474 U.S. at 59. Here, Ranson makes a general blanket allegation. He entered an Alford guilty plea because he thought the Commonwealth's evidence would be sufficient to find him guilty — even though his defense evidence, as stated by his counsel at the plea hearing and by him (at sentencing and in the petition) might be sufficient to find him not guilty. He has not demonstrated

11

that but for his counsel's alleged deficient advice, he would have proceeded to trial on nine felony offenses.[3]

(Ex. 4 at 13–14 (footnote number altered).)

### D. Analysis

Petitioner persists in asserting that he was inadequately advised with respect to available defenses. Central to this argument is Petitioner's contention that "counsel was flat wrong about the second shot because [] Petitioner had an exceptionally strong defense as to heat of passion, and [] Petitioner had an absolute defense based on the corpus delicti rule, which would not diminish any defenses of self, family, or heat of passion." (§ 2254 Pet. ¶ 110.) As explained below, this contention lacks merit and ignores the critical weakness of the defenses.

Petitioner states that:

> Under the corpus delicti rule, "an accused cannot be convicted solely on his uncorroborated extrajudicial admission or confession." *Watkins v. Commonwealth*, 238 Va. 341, 348, 385 S.E.2d 50, 54 (1989). Instead, "slight corroboration of the confession is required to establish corpus delicti beyond a reasonable doubt." *Cherrix v. Commonwealth*, 257 Va. 292, 305, 513 S.E.2d 642, 651 (1999) (emphasis added).
> . . . .
> In the present matter, the alleged second shot was used to charge the Petitioner with attempted murder, but the charge was based solely on the Petitioner's uncorroborated confession of shooting the second shot. Poythress was not aware of any such shot, and there is no physical evidence of a second shot hitting anything.

---

[3] There was also a ninth Indictment. Based on information in the Petition, defense counsel's summary at the plea hearing and Ranson's statements at sentencing, Ranson would have been the only defense witness. Defense counsel's affidavit stated Ranson's wife would invoke the Fifth Amendment. Ranson had made two prior incriminating statements about the second gunshot, one to law enforcement and one over the telephone while incarcerated, "shotgun shells" were photographed by law enforcement, and "bullet holes" were in Poythress' vehicle. (Plea Tr. 11–12).

> . . . .
> Without any corroboration of the second shot, the charge of attempted murder would not survive a motion to strike.

(§ 2254 Pet. ¶¶ 69, 71, 73 (paragraph numbers omitted).)

However, there was additional evidence corroborating that Petitioner fired a second shot at Poythress as he was trying to escape from Petitioner. Specifically, Mark E. Claiborne, an investigator with the Mecklenburg County Sheriff's Department, testified that on June 16, 2014, he obtained a statement from Petitioner wherein Petitioner admitted to shooting at a vehicle. (Aug. 14, 2014 Tr. at 5–6.) Thereafter, Investigator Claiborne went to the location where the shooting occurred. (*Id.* at 7.) Investigator Claiborne observed in the "dirt driveway" multiple "[s]pent shotgun shells." (*Id.*) As noted by the Circuit Court, the police also had a photograph of these spent shells. (Ex. 4 at 14 n.2.) The prosecution thus had physical evidence corroborating Petitioner's admission that he fired a second shot at Poythress as he was fleeing. Accordingly, counsel wisely perceived that Petitioner would almost certainly be convicted of the attempted murder charge and the associated firearm charge.

Further, Petitioner's other defenses, including heat of passion, defense of self, and defense of family, were hardly as strong as he suggests here. Rather, as counsel perceived, the prosecution's evidence persuasively indicated that Petitioner's actions were motivated by anger rather than by defense of self or family. Specifically, at a pretrial hearing, Poythress testified that, when he initially entered the property, he saw the woman and child on the dirt road. (Aug. 14, 2014 Tr. at 16.) Poythress testified that, as he passed them, he was "not close at all. I mean I had to go around the right-hand side of

the bicycle, and they were on the far left-hand side. So, I wasn't even nowhere close to them. I mean, maybe twelve, fourteen foot, something or another." (*Id.* at 17.) Poythress further testified that he was not going "very fast." (*Id.*) He explained: "Like I said, that road had holes and all in it and I had to drive a Toyota Camry, it has small ground clearance up under the car. And the bottom of the car would have hit if, you know, you tried to go too fast down it." (*Id.*) This evidence does not suggest that Poythress posed any reasonable threat to Petitioner or his family.

Poythress further testified that, as he was driving back out on the dirt road, "there was a man standing on the other side of the curve holding a shotgun. . . . He started to take a step or so out into the path. And then as he was stepping out into the path, he was raising the gun up." (*Id.* at 11.) "I mean, it was like he was standing there waiting to ambush me." (*Id.* at 19–20.)[4]

With respect to the advice provided by counsel regarding plea offers, in general, "[a] criminal defendant has a right to expect at least that his attorney will review the charges with [the defendant] by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising" the option to plead guilty or to proceed to trial. *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). Thus, when communicating a plea offer, counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the

---

[4] Harold Seaman, one of the men who was the subject of the abduction charge, testified that Petitioner detained them for five (5) to ten (10) minutes. (Feb. 11, 2015 Tr. 25.)

14

alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (citations omitted).

"On the other hand, the ultimate decision whether to plead guilty must be made by the defendant." *Id.* (citation omitted). "[A] lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." *Id.* (citing *Jones v. Murray*, 947 F.2d 1106, 1111 (4th Cir. 1991)). In successfully steering a course between inadequate advice and coercing a plea, counsel enjoys a "wide range of reasonableness" and "[t]here are countless ways to provide effective assistance in any given case." *Id.* (citing *Strickland*, 466 U.S. at 689, 693) (alterations in original). Accordingly,

> [c]ounsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea . . . , whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision.

*Id.* Here, counsel fully complied with these principles. Petitioner fails to demonstrate that counsel provided inadequate advice with regard to the decision to plead guilty or go to trial. Indeed, from the record, it appears that it would have been deficient for counsel to encourage Petitioner to believe that, if he preceded to trial, he would be acquitted of sufficient charges at trial to obtain a shorter sentence.

Furthermore, Petitioner fails to demonstrate prejudice. Petitioner is obviously frustrated with the sentence he ultimately received. Nevertheless, given the near certainty of Petitioner's conviction on multiple counts and the potential for a significantly lower sentence if he pled guilty, Petitioner fails to demonstrate that a rational defendant in his

15

position would have insisted on proceeding to trial. Accordingly, Petitioner's claim will be dismissed.

The Motion to Dismiss (ECF No. 5) will be granted. The § 2254 Petition (ECF No. 1) will be denied. A certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: March 28, 2024
Richmond, Virginia

16